UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ELAN PAVLOV, <br><br> Plaintiff <br><br> v. <br><br> WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES, LLC, AND WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, <br><br> Defendants. | Case No. 1:25-cv-11313-DJC |

MEMORANDUM AND ORDER

**CASPER, C. J.**                                                                December 1, 2025

**I.  Introduction**

Plaintiff Elan Pavlov ("Pavlov") has filed this lawsuit against Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC (collectively, "Defendants") alleging that Defendants wrongfully concealed, withheld and failed to escheat funds from a custodial account established for Pavlov's benefit under the Pennsylvania Uniform Transfers to Minors Act (the "PUTMA"), 20 Pa. C.S. §§ 5301–5321, in violation of Mass. Gen. L. c. 93A ("Chapter 93A") (Count I) and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* (Count II), and alleges common law claims for breach of

1

contract (Count III), breach of fiduciary duty (Count IV), conversion (Count V),[1] and unjust enrichment (Count VI).[2]  D. 1.  Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6).  D. 16.  For the reasons stated below, the Court ALLOWS Defendants' motion to dismiss.  Id.

## II.     Standard of Review

When in a diversity action, "all parties cite to Massachusetts case law to support their claims . . . [the] Court need inquire no further into choice of law." Merchants Ins. Grp. v. Mr. Cesspool, LLC, No. 08-cv-12040-DPW, 2010 WL 2836859, at *3 n.6 (D. Mass. July 19, 2010) (quoting Peabody Essex Museum, Inc., v. U.S. Fire Ins. Co., 623 F. Supp. 2d 98, 106 (D. Mass. 2009)).  As the parties here cite Massachusetts law in their briefs to the Court and do not dispute that Massachusetts law applies, this Court applies Massachusetts law. McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 298 n. 5 (1st Cir. 2004).

Under Rule 12(b)(6), a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id.  Factual allegations must be accepted as true, while conclusory legal allegations are not entitled

---

[1] In his opposition to Defendants' motion to dismiss, Pavlov states that he "does not oppose dismissal of Count V."  D. 19 at 16.  Accordingly, the Court dismisses Count V.

[2] As Defendants note, the complaint also alleges Defendants violated Pavlov's rights under the Gramm-Leach Bliley Act.  D. 1 ¶¶ 60-64.  As there is no private cause of action to enforce this Act, see Flinn v. Santander Bank, N.A., 359 F. Supp. 3d 128, 135 (D. Mass. 2019) (citing 15 U.S.C. § 6805), this claim is dismissed.

credit. Id. Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. If they do not, then dismissal is warranted. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### III. Factual Background

For the purposes of the motion to dismiss, D. 16, the Court confines itself to and accepts as true all well-pleaded facts in the complaint, save for considering "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

In the 1970s, Pavlov's grandparents established a custodial account at Wells Fargo (the "UTMA Account") pursuant to PUTMA,[3] designating Pavlov as the sole beneficiary of the account. D. 1 ¶ 25.[4] While Pavlov was a minor, Pavlov's grandmother served as custodian of the account. Id. ¶ 28. In May 1995, Pavlov turned twenty-one, the statutory age of termination of custodianship under PUTMA. Id. ¶¶ 28, 30, 32. As alleged, however, his grandmother never

---

[3] The PUTMA "provide[s] an inexpensive, easy way for giving property to minors." In re Lampe, 665 F.3d 506, 520 (3d Cir. 2011) (quotation omitted). Under the PUTMA, "[a] person may make a transfer by irrevocable gift to . . . a custodian for the benefit of a minor." 20 Pa. Cons. Stat. Ann. § 5304. A custodian must manage the minor's property, with "the standard of care that would be observed by a prudent person dealing with property of another." Id. § 5312(a)-(b). Once the minor reaches the age of twenty-one, the custodian must "transfer in an appropriate manner the custodial property to the minor or the minor's estate." Id. § 5320.

[4] Under the Massachusetts Uniform Transfers to Minors Act (the "MUTMA"), a transfer that is made pursuant to a substantially similar act of another state, "is governed by the law of the designated state and may be executed and is enforceable in the commonwealth if at the time of the transfer, the transferor, the minor, or the custodian is a resident of the designated state or the custodial property is located in the designated state." Mass. Gen. L. c. 201A, § 2. Here, the PUTMA statute is substantially similar to the MUTMA, and Pavlov alleges that his grandparents established a UTMA account "pursuant to Pennsylvania's UTMA statute," D. 1 ¶ 25, and were residents of Pennsylvania at the time, D. 1-1 ¶ 2. Thus, the UTMA transfer at issue in this complaint is governed by the law of Pennsylvania and is enforceable in Massachusetts.

transferred the funds in the UTMA Account to Pavlov and retained control over the funds therein. Id. ¶ 32. In 1998, at the age of twenty-four, Pavlov was discharged from military service in Israel. Id. ¶ 50. Following his discharge, Pavlov "made multiple inquires to the Pennsylvania Department of Unclaimed Property . . . hoping to locate the funds his grandparents had set aside for him." Id. ¶ 47. As the account had not been escheated, id. ¶¶ 40-46, the state had no record of the account, id. ¶ 47. Pavlov did not take any further action to locate the account at that time and was unable to access the funds therein. Id. ¶ 51. As a result, "he was left without any financial support," id. ¶ 50, and was subsequently "rendered homeless" for a period of time following his military discharge, id. ¶ 51.

As alleged, Defendants extracted fees from the UTMA Account "over the course of nearly three decades," id. ¶ 53, and allowed Pavlov's grandmother to conduct multiple "unauthorized transactions" after Pavlov reached the age of termination of custodianship in May 1995, id. ¶ 57. On February 23, 2004, someone (whom Pavlov appears to allege was his grandmother), see id.; D. 1-1 ¶ 5, purchased "$5,000 of callable Bank of America 5.4% Internotes" with funds from the UTMA Account, D. 1-2 at 3. On February 7, 2009, the UTMA Account converted from A.G. Edwards to Wachovia Securities, "another legacy [Wells Fargo] firm," when the firms merged and was subsequently subject to annual fee charges and two tax levies issued by the Commonwealth of Massachusetts Department of Revenue against Pavlov, as the beneficial owner. Id.; see D. 1 ¶ 56. On June 22, 2021, the account was credited $450 to reimburse fees charged from 2009-2020. D. 1-2 at 3. At some point, Defendants began to recognize Pavlov's mother, Holly Pavlov, as "the custodian" of the UTMA Account, allowing her to "exercise control over [Pavlov]'s account." D. 1 ¶ 33; D. 1-2 at 3-4. "[A]s late as 2024," Defendants allegedly continued to send account statements to Pavlov's grandmother and mother, D. 1 ¶ 38, and as of at least May 15, 2024,

4

Defendants have continued to recognize Pavlov's mother as "the custodian" of the account, D. 1-2 at 4. From May 1995 to April 2024, Defendants did not provide Pavlov with "regular disclosures about his account," nor send any "correspondence or disclosure of any kind directly to [Pavlov]." D. 1 ¶ 37.

Even as alleged, Pavlov "became aware of the location [of the UTMA Account] upon the death of [his] grandmother," D. 1-1 ¶ 3, sometime in 2021, D. 1 ¶¶ 6, 47.[5] On March 22, 2024, Pavlov sent demand letters to Defendants alleging that they concealed the UTMA Account, withheld Pavlov's funds and gave account access to former custodians. Id. ¶¶ 66, 73. Pavlov requested "a complete accounting of all transactions made on the account since May 23rd 1988," D. 1-1 ¶ 8, and demanded that Defendants pay him "the original sum [in the UTMA Account] as of May 23rd 1995 with 12% statutory interest compounded yearly," or, "[i]n the event that Wells Fargo is unable to provide said accounting . . . the original 25,000 usd with 12% statutory interest compounded yearly since May 23rd 1995" totaling "approximately $660,000," id. ¶ 9, as well as $5,000,000 in compensatory damages and $10,000,000 in punitive damages, id. ¶¶ 10-11.

On May 15, 2024, Defendants responded and declined to offer Pavlov compensation. D. 1 ¶ 74. First, Defendants stated that the custodian, not Wells Fargo, has the responsibility to transfer assets in an UTMA account to the beneficiary once they reach the age of termination, and despite "inform[ing] Holly Pavlov (custodian) of her duty and obligation to transfer the account" to Pavlov, advising her on the steps to do so and also providing Pavlov with the necessary

---

[5] Defendants contend Pavlov became aware of the account's location on October 19, 2019, the date on which Pavlov's grandmother died. D. 17 at 4, 9; see D. 17-2 at 2. In his opposition, Pavlov maintains that the date stated in the complaint, 2021, resolves any ambiguity. D. 19 at 7-8. At this stage, the Court thus has not relied upon the Defendants' contention regarding October 19, 2019 and instead has relied upon the allegations in the complaint and the reasonable inferences to be drawn from same. See Schatz, 669 F.3d at 55; J & J Sports Prods., Inc. v. Carvajal, No. 11-cv-40129-FDS, 2011 WL 4499156, at *2 (D. Mass. Sept. 26, 2011).

paperwork to "transfer the UGMA account into an individual brokerage account in [his] name," neither Holly Pavlov nor Pavlov "submitted the documents necessary to transfer the UGMA account assets." D. 1-2 at 3. Defendants stated that without the necessary paperwork, they cannot transfer the ownership of the account and "the custodian remains an authorized party of record on the account." Id. Second, Defendants explained that they did not escheat the UTMA Account because account statements were not returned as undeliverable until January 29, 2021, thus the account did not qualify as unclaimed properly. Id. Third, Defendants declined Pavlov's request for a complete accounting of all transactions made on the account since 1988 "given the extensive passage of time," but provided information on the 2004 purchase of Bank of America Internotes, charges of annual fees from 2009-2020, collection of tax levies, and reimbursement of fees in 2021. Id. Defendants also provided Pavlov with paperwork to allow them to issue and mail a check for the full UTMA Account balance to Pavlov and informed Pavlov that the form "must be signed by both [him] and the custodian, Holly Pavlov." Id. at 4.

**IV.    Procedural History**

Pavlov initiated this lawsuit on May 9, 2025. D. 1. Defendants now have moved to dismiss the complaint. D. 16. The Court heard the parties on the pending motion and took the matter under advisement. D. 24.

**V.    Analysis**

    **A.    Count I:  Chapter 93A Claim**

In Count I, Pavlov alleges that Defendants violated Chapter 93A by engaging in unfair and deceptive acts including but not limited to: "(a) [f]ailing to notify [him] of his legal entitlement to full ownership of his UTMA account upon reaching the age of termination in May 1995; (b) [c]ontinuing to recognize and communicate with a former custodian who had no legal authority to

the account; (c) [w]ithholding account information from [him] for nearly three decades; (d) [c]oncealing the existence of the account and thereby depriving [him] of access to funds lawfully belonging to him; (e) [c]harging and withdrawing fees from [his] account without his knowledge or consent; (f) [a]llowing unauthorized transactions on the account by third parties not legally entitled to access or manage the funds; (g) [w]illfully failing to comply with state escheatment obligations, including omitting the account from reports to the Pennsylvania Treasury for over twenty years; (h) [i]llegally disclosing [his] nonpublic personal financial information to unauthorized individuals in violation of the Gramm-Leach-Bliley Act; (i) [f]ailing to provide [him] with the privacy notices and opt-out rights mandated by federal law; and (j) [m]isrepresenting or omitting material facts in communications, or through the absence of communications, regarding [his] account ownership and rights." D. 1 ¶ 71. Defendants move to dismiss on the ground that the Chapter 93A claim is untimely. D. 17 at 9-10.

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113-14 (1st Cir. 2009) (alteration in original) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008)) (internal quotation marks omitted). A dismissal for timeliness is warranted under Rule 12(b)(6) when "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (citations omitted).

The parties agree that the relevant limitations period for Chapter 93A claims is four years, D. 17 at 9; D. 19 at 7; see Mass. Gen. L. c. 260, § 5A, but dispute when Pavlov's claims began to accrue. A cause of action accrues when "the plaintiff knew or should have known of appreciable

harm resulting from the defendant's [actions]." Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 504 (D. Mass. 2012) (quoting Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 740 N.E.2d 1039, 1044 (2001) (alteration in original)). "A plaintiff does not have to possess actual knowledge of every element of the claim for it to accrue; instead, it accrues as soon as a plaintiff possesses 'knowledge of the facts sufficient to put [her] on inquiry notice' of a possible claim." Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 97-98 (D. Mass. 2009) (quoting Marrapese v. Rhode Island, 749 F.2d 934, 937 (1st Cir. 1984) (alteration in the original)). Defendants argue that because Pavlov was aware of the account's existence in 1998, he is not entitled to tolling on his claims because the facts underlying his injuries, including the account's location, "were known or 'knowable' by [him]" no later than 1998. D. 17 at 7. Pavlov argues that because he was "unaware" of the account's location until at least 2021, the majority of his claims did not begin to accrue until then, D. 19 at 3, 6-8; see D. 1 ¶¶ 6, 47, and because Defendants did not disclose the unauthorized transactions and fees until 2024, those claims did not begin to accrue until 2024, D. 19 at 3; see D. 1 ¶¶ 37, 57. Alternatively, Pavlov argues that the claims are timely either because the facts underlying them, namely the account's location, were inherently unknowable until 2021 or because they should be tolled under the fraudulent concealment doctrine or the continuing violation doctrine. D. 19 at 2-3, 6, 8.

Pavlov's claims based on Defendant's alleged concealment of the UTMA Account, continued recognition of former custodians, failure to comply with state escheatment obligations and failure to communicate with him, D. 1 ¶ 71(a)-(d), (g)-(j), accrued no later than 1998. Even as alleged, Pavlov acknowledges that in 1998, he "had reasonably expected that the funds in his UTMA account would be available to support his transition to civilian life following his term of compulsory military service in Israel," id. ¶ 50, and that following his discharge, Pavlov "made

multiple inquiries to the Pennsylvania Department of Unclaimed Property . . . hoping to locate the funds his grandparents had set aside for him," id. ¶ 47. Pavlov's allegations make clear that, no later than 1998, Pavlov knew his grandparents had created an UTMA account for him to which he was not given access when he reached the age of termination of custodianship in May 1995. Likewise, the complaint alleges that Pavlov knew the account was not escheated to the state following his "multiple inquires" to the Pennsylvania Department of Unclaimed Property in 1998. Id. ¶¶ 44, 47. While Pavlov alleges that he was "unaware" of the account's location until 2021, id. ¶¶ 6, 47; see D. 19 at 2-3, 6, as explained below, it was not inherently unknowable that the account was located at Wells Fargo in 1998. Thus, by 1998, Pavlov was on notice of his claims that Defendants concealed the UTMA Account, continued to recognize former custodians, failed to comply with state escheatment obligations and failed to communicate with him.

Pavlov is not entitled to tolling of these claims. Under Massachusetts's discovery rule, "the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (internal quotation omitted). For the discovery rule to apply, "the factual basis for the cause of action must have been inherently unknowable," such that it is objectively "not capable of detection through the exercise of reasonable diligence at the time of injury." Sanchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014) (internal quotation marks omitted). Thus, the discovery rule charges a plaintiff not only with what he actually knew about his injury, but also with "what a reasonable person, once fairly prompted to investigate, would have discovered by diligent investigation." Litif v. United States, 670 F.3d 39, 44 (1st Cir. 2012); see Rakes v. United States, 442 F.3d 7, 20 (1st Cir. 2006) (noting that the court must determine "what such an investigation would likely have revealed"). "The plaintiff bears the burden of

9

presenting facts sufficient to take the case outside the statute of limitations." Catrone v. Thoroughbred Racing Associations of N. Am., Inc., 929 F.2d 881, 885 (1st Cir. 1991) (citing Franklin v. Albert, 381 Mass. 611, 411 N.E.2d 458, 463 (1980)).

Pavlov's argument that the account's location was "inherently unknowable," D. 19 at 8-10, fails. Pavlov fails to allege plausibly that he engaged in a diligent investigation to discover the location. Pavlov's allegations that Defendants never notified him of the account, D. 1 ¶¶ 37, 51, and that Pavlov's "multiple inquiries to the Pennsylvania Department of Unclaimed Property," to locate the account in 1998 were "futile," id. ¶ 47, do not establish that he was unable to discover its location from any other source, or even attempted to do so. See Camerano v. United States, 196 F. Supp. 3d 172, 178 (D. Mass. 2016) (rejecting plaintiff's argument that, due to defendant's failure to provide a complete set of records, plaintiff was unable to discover location of injury because information was available from other sources), aff'd, 855 F.3d 15 (1st Cir. 2017); Billups v. Kinsella, No. 08-CV-3365, 2009 WL 4679947, at *4 (N.D. Ill. Dec. 4, 2009) (rejecting plaintiff's argument that "it was impossible" to learn defendants' identities without their discovery responses as plaintiff "has not pled facts sufficient to suggest that she actively sought to learn the identities of defendant[s]"). In particular, Pavlov neither alleges that he could not have asked his mother or grandparents, who he knew had "set aside" the funds for him, for the account's location during the thirty-year period he was entitled to the funds therein, nor claims that they were unwilling to disclose the location to him. D. 17 at 8. As nothing in the complaint suggests that the account's location could not have been discovered with due diligence, Pavlov is not entitled to tolling of his claims that Defendants concealed the UTMA Account, continued to recognize former custodians on the account, failed to comply with state escheatment obligations and failed to communicate with him under the discovery rule. See Saenger Org., Inc. v. Nationwide Ins.

10

Licensing Assocs., Inc., 119 F.3d 55, 65 (1st Cir. 1997) (rejecting application of discovery rule where plaintiff merely contends that facts were unknown to him, not that they were inherently unknowable).

Pavlov is also not entitled to tolling under the fraudulent concealment doctrine. Under this doctrine, "the statute of limitations may be temporarily tolled during such time that the perpetrator purposefully and successfully conceals his or her misconduct from its victim." Álvarez-Mauras v. Banco Popular of P.R., 919 F.3d 617, 626 (1st Cir. 2019). Pavlov's argument that Defendants deliberately "concealed the account's existence" from Pavlov, D. 1 ¶¶ 5, 48, 53; D. 19 at 10, fails even as alleged. While Pavlov alleges that Defendants continued to recognize former custodians, failed to notify him about his entitlement to the account or provide him with financial statements and privacy notices and failed to comply with escheatment rules, Pavlov does not allege any facts to support the claim that Defendants did so for the purpose of concealing the UTMA Account from him. See Camerano, 196 F. Supp. 3d at 179 (noting that "[f]or a claim of concealment to result in equitable tolling, the concealment must have been fraudulent and deliberate") (citing Bennett ex rel. Estate of Bennett v. United States, 429 F. Supp. 2d 270, 281 (D. Mass. 2006)). Thus, Pavlov is not entitled to tolling under the fraudulent concealment doctrine.

Nor does the continuing violation doctrine apply. The continuing violation doctrine allows a plaintiff to seek damages for acts occurring outside the limitations period only if those acts are part of an ongoing course of unlawful conduct that continued into the limitations period. See O'Rourke v. City of Providence, 235 F.3d 713, 730-31 (2001). However, "'ongoing injuries' or harmful 'effects" of a single unlawful act do not extend the limitations period." Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 51 (1st Cir. 2011) (internal citation omitted). Here, the complaint alleges that Pavlov's claims are

based on "harm beg[inning] in May 1995, when [Pavlov] turned 21 and became the lawful owner of the UTMA account," D. 1 ¶ 50, and Defendants failed to "recognize him as the sole owner of the account," id. ¶¶ 3-4. Although Pavlov alleges that Defendants engaged in "prolonged" conduct, id. ¶ 65, continuing into at least 2021, id. ¶¶ 6, 47, Defendants' alleged conduct is based on "a singular act that brings continuing consequences in its roiled wake," Gilbert v. City of Cambridge, 932 F.2d 51, 58-59 (1st Cir. 1991). Thus, Pavlov is not entitled to tolling under the continuing violation doctrine.

As the UTMA Account's location was not inherently unknowable in 1998, when Pavlov knew of the account's existence and his inability to access the funds therein, and neither the fraudulent concealment doctrine nor the continuing violation doctrine apply, the statute of limitations for Pavlov's Chapter 93A claims based on Defendants' alleged concealment of the UTMA Account, continued recognition of former custodians, failure to comply with state escheatment obligations, disclosure of nonpublic financial information to unauthorized individuals, failure to provide Pavlov with privacy notices and opt-out rights, and misrepresentation and omission of material facts in communications, D. 1 ¶ 71(a)-(d), (g)-(j), began to accrue no later than 1998. Accordingly, these claims are untimely.

As to Pavlov's claims based on the allegedly unauthorized fees and transactions, id. ¶ 71(e)-(f), Pavlov alleges that fees were withdrawn from the UTMA Account "over the course of nearly three decades," id. ¶ 53; see D. 1-1 ¶ 6, and that at some point between May 1995 and 2024, his grandmother conducted transactions with the account, D. 1 ¶ 57; D. 1-1 ¶ 5. Exhibits attached to the complaint reference account fees withdrawn from 2009-2020 and a transaction conducted in 2004. D. 1-2 at 3. Pavlov argues that these alleged fees and transactions were inherently unknowable until 2024, D. 19 at 3, as his account was "inaccessible to him," D. 1 ¶ 55, Defendants

12

allegedly did not provide any "correspondence or disclosure of any kind directly to [him]," and he did not receive a financial statement "until April 2024," id. ¶¶ 37, 53.  Taking the allegations in the complaint as true, the fees and transactions were discoverable by means other than account statements.  Notably, despite "Defendants sen[ding] no correspondence or disclosure of any kind directly to [Pavlov] between May 1995 and April 2024," id. ¶ 37, Pavlov's demand letter (attached and incorporated into the complaint) establishes that he was aware of the fees and transactions by March 11, 2024 (date of the demand letter), weeks before he claims Defendants first sent him a financial statement, id.; see D. 1-1 ¶¶ 5-6.  This awareness defeats his argument that he could not have known about these claims without Defendants' disclosures.  See D. 19 at 3.  Further, Pavlov alleges that he "has incurred significant tax liabilities," D. 1 ¶ 56, including "two tax levies issued by the Commonwealth of Massachusetts Department of Revenue," D. 1-2 at 3, which he claims were a "consequence of" and "directly traceable to transactions and fees executed without [his] knowledge or authorization," D. 1 ¶ 56; see D. 1-1 ¶ 5.  Pavlov's tax levies were also sufficient to put him on inquiry notice of his claims based on unauthorized transactions and fees.

Any failure to act by seeking to transfer the UTMA Account to himself, see D. 19 at 8-11, is not grounds to toll his claims.  See Town of Princeton v. Monsanto Co., Solutia Inc., 202 F. Supp. 3d 181, 188 (D. Mass. 2016) (noting that "once the plaintiff has received sufficient notice of potential injury arising from an inherently unknowable danger, the plaintiff . . . may not 'rest on [her] rights' and 'ignore[] [the] duty to further investigate'") (internal citations omitted).  Pavlov does not allege, for that matter, that he was unable to request the account to be transferred from his mother, grandmother or Defendants to himself, that he even attempted to do so, nor that any of these parties were unwilling to transfer the account within the three-year period following his injuries.  For the same reasons as outlined above, Pavlov finds no solace in the fraudulent

13

concealment doctrine, nor does the continuing violations doctrine apply because, as alleged, these injuries stem from Defendants' alleged "conceal[ment] of the account's existence," "direct[ion] [of] all communications to the former custodian," D. 1 ¶ 53, and failure to "timely escheat[] the account," id. ¶ 56, all of which occurred no later than 1998, see Gilbert, 932 F.2d at 58-59. Thus, Pavlov fails to establish that the account transactions and fees were inherently unknowable.[6] As these dates fall outside the three-year period prior to the commencement of this action, these claims are also untimely.

For the aforementioned reasons, Defendants' motion to dismiss Count I is allowed.

### B.    Count II:  Electronic Fund Transfer Act Claim

In Count II, Pavlov alleges that Defendants violated the EFTA by failing to provide him with periodic account statements. D. 1 ¶¶ 77-83. Defendants move to dismiss on the ground that this claim is time-barred. D. 17 at 11. The EFTA requires financial institutions to provide periodic statements to account holders for each monthly cycle in which an electronic fund transfer occurs and, at a minimum, quarterly even if no such transfer occurs. 15 U.S.C. § 1693d(c). An action under EFTA must be brought "within one year from the date of the occurrence of the violation." Id. § 1693m(g). Pavlov's EFTA claim is time-barred. Pavlov alleges that Defendants failed to

---

[6] To the extent that Pavlov bases his unauthorized transactions claim on any transaction beyond the one referenced in his exhibit, D. 1-2 at 3, he has failed to allege any dates on which any other transaction occurred. To satisfy Rule 8, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Thus, "[a] plaintiff cannot circumvent the statute of limitations bar by citing conduct with no date." Thornton v. Macy's Retail Holdings, Inc., No. 20-cv-40045-DHH, 2021 WL 1430692, at *7 n.14 (D. Mass. Mar. 5, 2021), report and recommendation adopted, No. 4:20-cv-40045, 2021 WL 2043859 (D. Mass. Mar. 23, 2021); see Foster v. Fink, No. 3:14-cv-1368, 2016 WL 1728723, at *6 (M.D. Pa. Mar. 9, 2016) (noting that failure to "allege . . . when [] conduct took place . . . !impedes any efforts to determine whether this pleading was timely filed within the statute of limitations" and warrants dismissal under Rule 8) (internal citations omitted), report and recommendation adopted, No. 3:14-cv-01368, 2016 WL 1718246 (M.D. Pa. Apr. 28, 2016).

provide him with periodic account statements starting in May 1995, thirty years prior to the commencement of this action. D. 1 ¶¶ 37, 80. At the latest, Pavlov alleges that Defendants failed to provide the statements until April 2024. Id. ¶ 37; see Diviacchi v. Affinion Grp., Inc., No. 14-cv-10283-IT, 2015 WL 3631605, at *10 (D. Mass. Mar. 11, 2015) (recognizing that for other rights protected under EFTA, each violation "constitutes a new and independent violation" that is actionable if it falls within the one-year limitation period regardless of whether earlier violations fell outside the window); Salls v. Digital Fed. Credit Union, 349 F. Supp. 3d 81, 91-92 (D. Mass. 2018) (noting same). Even if the one-year statute of limitations started in April 2024, this date falls outside the one-year period prior to commencement of this action on May 9, 2025, D. 1. Thus, this claim is untimely.

Accordingly, Defendants' motion to dismiss Count II is allowed.

### C. Count III: Breach of Contract Claim

In Count III, Pavlov alleges that Defendants breached Pavlov's contractual rights as a third-party beneficiary to "agreements" entered into with Pavlov's grandparents in their capacity as UTMA custodians, alleging the same conduct as breaches as advanced as "unfair and deceptive acts" in Count I. D. 1 ¶¶ 84-90. Defendants move to dismiss on the ground that this claim is time-barred. D. 17 at 11-13. The statute of limitations in an action for breach of contract in Massachusetts is six years. See Mass. Gen. L. c. 260 § 2. For the same reasons as articulated as to Count I, Defendants' motion to dismiss Count III is allowed.

### D. Counts IV: Breach of Fiduciary Duty Claim

In Count IV, Pavlov also relies upon the same conduct as alleged in Counts I and III to support his breach of fiduciary duty claim and additionally alleges that Defendants "[f]ail[ed] to act with a reasonable prudence, care, and diligence expected of a financial fiduciary entrusted with

15

custodial assets." D. 1 ¶ 94.  Defendants move to dismiss on the grounds that these claims are time-barred and fail to state a claim.  D. 17 at 13-14, 16-18.

Defendants contend that the statute of limitations for breach of fiduciary duty claims is three years, id. at 13 (citing Mass. Gen. L. c. 260, § 2A), while Pavlov contends that the applicable statute of limitations is instead six years, arguing that "the essential nature of [his] fiduciary duty claim is fundamentally contractual, arising directly from Wells Fargo's obligations under the UTMA custodial agreement, to which Plaintiff was the intended third-party beneficiary," D. 19 at 11; see Barber v. Fox, 36 Mass. App. Ct. 525, 529 (1994) (finding that although breach of fiduciary duty claims usually "sound in tort, the essence of each claim is the complaint that [Defendants] have failed to do as they promised" and because the "'gist of the action' is contractual, the contract period of limitations applies to each claim").  Under either period, Pavlov's claims are untimely and shall be dismissed on that ground.  Additionally, Pavlov's claim that Defendants "[f]ail[ed] to act with a reasonable prudence, care, and diligence expected of a financial fiduciary entrusted with custodial assets," id. ¶ 94(k), is conclusory, and thus cannot support a breach of fiduciary duty claim.[7]

Accordingly, Defendants' motion to dismiss Count IV is allowed.

### E.     Count VI:  Unjust Enrichment Claim

In Count VI, Pavlov alleges that Defendants were unjustly enriched from retaining control over his custodial account through their collection of fees, interest and other returns, as well as their inclusion of Pavlov's funds in "reporting to stakeholders and [] calculating bank regulatory capital."  D. 1 ¶¶ 104-09.  Defendants move to dismiss on the grounds that these claims are time-

---

[7] Having determined that Pavlov's breach of fiduciary duty claim is untimely, the Court need not address Defendants' argument on the sufficiency of Pavlov's allegations.  See D. 17 at 16-18.

barred and duplicative of Pavlov's Chapter 93A claim. D. 17 at 15-16, 18-19. As explained above, Pavlov's claim that Defendants withdrew fees from the UTMA Account can be dismissed on timeliness grounds. Further, this claim is duplicative. "[U]nder Massachusetts law, plaintiffs with 'an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy is not viable.'" Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 69 (1st Cir. 2020) (internal citation omitted). Here, Pavlov's allegation that Defendants charged fees to the account, seeks to redress the same injury as that alleged under his Chapter 93A claim, D. 1 ¶ 71(e), his breach of contract claim, id. ¶ 88(e), and his breach of fiduciary duty claim, id. ¶ 94(e). Thus, this claim may also be properly dismissed on duplicative claim grounds. Schuster v. Wynn MA, LLC, 118 F.4th 30, 38 (1st Cir. 2024)).

Pavlov's claim that Defendants were allegedly "earning interest or other returns, and including the amount of [his] funds in reporting to stakeholders and [] calculating bank regulatory capital" since May 1995, D. 1 ¶ 106, is likewise untimely for the same reasons as discussed as to the untimely claims under Counts I, III, and IV. Pavlov does not identify the source of this alleged information, but his knowledge of the account's existence in 1998 and that he was not provided access to it despite his entitlement to the funds in 1995 is sufficient to put him on inquiry notice of this claim. Like his other untimely claims, Pavlov fails to allege facts to establish that the factual basis of this claim was inherently unknowable or fraudulently concealed, or that the claim is entitled to tolling under the continuing violations doctrine. Thus, Pavlov's claim that Defendants earned interest and other returns and included Pavlov's funds in reporting to stakeholders and calculating bank regulatory capital is dismissed on timeliness grounds.

Accordingly, Defendants' motion to dismiss Count VI is allowed.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss.  D. 16.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge
